269 So.2d 123

**G. L. WAINWRIGHT**

v.

**ROLLING ACRES, INC., a corporation, et al.**

**SC 25.**

Supreme Court of Alabama.

Nov. 16, 1972.

Elno A. Smith, Jr., Montgomery, for appellant.

Clarence M. Small and Clyde A. Smith, Montgomery, for appellees.

MADDOX, Justice.

Rolling Acres, Inc., a corporation, filed its bill for a declaratory judgment and temporary injunction in the Circuit Court of Lowndes County on August 31, 1971, alleging that it entered into an agreement or bond for title on March 26, 1970 with G. L. Wainwright and Frances M. Wainwright to sell the Wainwrights ten acres of land located partly in Lowndes County, and partly in Montgomery County. The bill averred that the Wainwrights paid $1,334 down at the time of execution of the bond for title and agreed to pay $50 per month with interest at the rate of seven per cent (7%) per annum, beginning May 25, 1970.

The petition alleged that G. L. Wainwright declared bankruptcy and that the $50 monthly payments were delinquent. Rolling Acres alleged that it notified the Wainwrights of the default, but in spite of the warnings the payments remained delinquent and that in February, 1971, it caused notice to be mailed by its attorney to the Wainwrights, notifying them that in ac-

cordance with the terms of the bond for title, it was being annulled and the payments which were made would be deemed the reasonable rental value of the property. G. L. Wainwright denied receiving this notice.

Shortly after the notice was mailed, Mrs. Wainwright, who was one of the parties to the agreement, went to the office of Clarence Small, attorney for Rolling Acres, and advised the president of Rolling Acres that she knew the payments were in default and that no further payments would be made.[1]

On February 25, 1971, Mrs. Wainwright asked Rolling Acres to allow one B. G. Pruitt to purchase the land covered by the bond for title. Pruitt was to pay Mrs. Wainwright $2,500, which he did, and pay Rolling Acres the balance of $2,342.31 at the rate of $50 per month. Rolling Acres was to execute a bond for title to Pruitt, which it failed to do, apparently because Mr. Wainwright (the husband and other party to the bond for title) mailed a money order to Rolling Acres in early March, 1971.[2]

Wainwright filed suit in Lowndes County claiming he was not in default. Pruitt was threatening suit to compel Rolling Acres to execute a bond for title to him. Wainwright was threatening to sue Pruitt and the president of Rolling Acres, individually. The declaratory judgment action was filed to determine in one action all the rights of the parties.

After hearing evidence ore tenus, the trial judge, on December 28, 1971, entered a decree finding that Mrs. Wainwright had no right, title or interest in the property. The judge also found that G. L. Wainwright was in default under the terms of the bond for title and had forfeited all of his right, title and interest in the land or any future interest therein and to any monies paid under the bond for title.[3] The judge also ordered Rolling Acres to execute a bond for title to Pruitt.

We now consider appellant's argued assignments of error which are material.

■ A bond for title is in legal effect ordinarily regarded as a contract to convey land. 91 C.J.S. Vendor and Purchaser § 44, p. 895. The agreement between Rolling Acres and Wainwright contained specific provisions for forfeiture, as follows:

"The Party of the Second Part agrees that in case of failure to pay any of said installments when due, or in case of said

---

1. There was evidence introduced that Mr. and Mrs. Wainwright were having marital difficulties at the time the notice of termination was mailed. Evidence was also presented that Mrs. Wainwright made the following statement in attorney Small's office:
   "Well, the statement was that she had gotten a divorce from her husband Mr. Wainwright and she needed the money, and they wasn't (sic) going to make any more payments on the land, and she knew they were behind on it, but she was suing him for a divorce and she was badly in need of the money and she wanted to know if she could get up a person to pay her the equity, that if we would let her sell the land to a person for the equity that she could get from them, and let them take up the payments, and I told her yes, that she and Mr. Small could do that because she was in dire need of the money."

2. Rolling Acres refused to accept the $50 money order and notified Wainwright that he was in default two payments, that no further payments would be accepted, and that his wife had told the president that no further payments would be made. There is some evidence in the record that Wainwright refused to accept the letter returning the money order, but in an unlawful detainer proceeding before Judge Marks of the Montgomery County Court, Judge Marks ordered Wainwright's attorney to accept the letter returning the money order.

3. It might be noted that even though there was a forfeiture as to G. L. Wainwright, Pruitt paid Mrs. Wainwright $2,500, an amount substantially more than the Wainwrights had paid Rolling Acres under the agreement.

party of the second part's failure to comply with any term of this agreement, or in case of failure to comply with any promise or agreement herein obtained, (sic) then, and in either event, the party of the first part shall have the right to annul this agreement, and in such an event, the party of the second part shall then become the tenant of the said party of the first part, and said party of the first part shall be entitled to the immediate possession of said property described herein, and may take possession thereof, and may eject the said party of the second part by an action of unlawful detainer, and shall retain all the monies paid under this agreement by the party of the second part as rent of the premises, (said amount being hereby agreed and declared by said parties to be the rental value of the premises.)"

■ In view of the uncontradicted evidence that the Wainwrights had not paid as agreed, the trial court was authorized to find that the parties had agreed that time was of essence, even though not stipulated in the contract, and the vendor had a right to cancel for nonperformance. Cf. Blocker v. Lowery, 285 Ala. 448, 233 So.2d 233 (1970).

■ Appellant contends that the record affirmatively shows that two mortgagees were not made parties, and that they were indispensable parties, and that objection to the failure to join such indispensable parties can be made on appeal, citing Hodge v. Joy, 207 Ala. 198, 92 So. 171 (1922). Hodge v. Joy seems to be authority for the position taken by the appellees that since the interests of the mortgagees is in nowise affected by the decree rendered by the trial court, it was not necessary to join them as parties.

Appellant's assignments of error numbers 4 and 6 are as follows:

"4. For that the Court erred in overruling Respondent's several objections throughout the hearing in this cause, to which Respondent reserved proper exception.

"6. For that the Court erred in allowing inadmissible evidence to be introduced into evidence."

■ These assignments wholly fail to comply with Rule 1, Supreme Court Rules. The assignments do not specify on what pages of the transcript the alleged error occurred, and further, the rulings are referred to in a most general way. Such assignments are not sufficient to invite our review in that they do not state concisely the error complained of as required by Supreme Court Rule 1. Anderson v. Smith, 274 Ala. 302, 148 So.2d 243 (1962):

Finding no reversible error in the argued assignments of error, the decree of the trial court is due to be affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and SOMERVILLE, JJ., concur.